UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MILLENNIA HOUSING MANAGEMENT LTD. ET AL,** | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )<br>) |
| **UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,** | )<br>)<br>)<br>) |
| and | )<br>) CASE NO. 1:24-CV-02084 |
| **SCOTT TURNER, in his official capacity as Secretary of the United States Department of Housing and Urban Development,** | )<br>) DISTRICT JUDGE DAN A. POLSTER<br>)<br>) **FIRST AMENDED COMPLAINT FOR**<br>) **DECLARATORY AND INJUNCTIVE** |
| and | ) **RELIEF**<br>) |
| **JULIA GORDON, in her official capacity as Assistant Secretary for Housing – Federal Housing Commissioner, United States Department of Housing and Urban Development,** | )<br>)<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **SCOTT KNITTLE, in his official capacity as Principal Deputy General Counsel, United States Department of Housing and Urban Development,** | )<br>)<br>)<br>)<br>) |
| and | )<br>) |
| **ALEXANDER FERNANDEZ-PONS in his official capacity as Administrative Law Judge, United States Department of Housing and Urban Development** | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

Plaintiffs Cherry Estates LP; Cherry Estates Investment, LLC; Flushing Elmcrest Limited Dividend Housing Association Limited Partnership; Elmcrest Investment, LLC; Covenant Apartments LP; Covenant Apartments Investment, LLC; Covenant Project, LLC; Bethel Tower Limited Dividend Housing Association Limited Partnership; Bethel Tower Investment, LLC; Trail West, Ltd.; Trail West Investment, LLC; Trail West Housing Partners, Inc.; Robinson Heights Apartments I, LP; Robinson Heights Apartments Investment I, LLC; Hickory Creek Estates, Ltd.; Hickory Creek Estates Investment, LLC; Sherman Thompson OH TC, L.P.; Sherman Thompson Towers Investment, LLC; Highland Place Associates I, Ltd.; Highland Place Investment I, LLC; Petosky Riverview Limited Dividend Housing Association Limited Partnership; Petoskey Riverview Investment, LLC; Oakdale Estates, Ltd.; Oakdale Estates II Investment, LLC; Oakdale Estates Investment GP, LLC; Oakdale Estates Investment LLC; Morning Star Tower, Ltd.; Morning Star Tower Investment, LLC; International Towers I Ohio, Ltd.; International Tower Investment I, LLC; YMHA Housing Preservation, LLC; Kingsbury Tower I, Ltd; Kingsbury Tower Investment I, LLC; Hunter's Run Investment, LLC; Halton HR Investors, LLC; HWFB HR Investment, LLC; Halton Springs Investments, LLC; Millennia Housing Management, Ltd.; and Frank Sinito (collectively, "Plaintiffs") by and through undersigned counsel, hereby file the following First Amended Complaint against Defendant United States Department of Housing and Urban Development ("HUD"), pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), requesting the Court enter a preliminary and permanent injunction and declaratory relief to enjoin all proceedings against Plaintiffs as instituted and currently pending before the HUD Office of Hearings and Appeals ("OHA") in an effort to recognize and honor Plaintiffs' Seventh Amendment right to a jury trial and their right not to be required to appear in proceedings before a constitutionally unaccountable administrative law judge.

**INTRODUCTORY STATEMENT**

Plaintiffs bring this amended complaint to enjoin HUD and its OHA's unlawful administrative proceedings that seek to impose millions of dollars in civil money penalties on the Plaintiffs without the benefit of a trial by jury or the protections of an Article III court. This is unconstitutional. *S.E.C. v. Jarkesy*, 144 S. Ct. 2117, 2127 (2024). Despite this recent Supreme Court decision, HUD has made no effort to remedy its defective enforcement mechanism or to dismiss its unconstitutional claims against the Plaintiffs; instead, it continues to subject plaintiffs to an unconstitutional forum that utilizes unlawful and unconstitutional procedures, all in violation of the Constitution. The proceedings before the OHA are constitutionally flawed for a further reason: the appointment of an ALJ by HUD to preside over the OHA proceedings violates the "take care" clause of Article II because the ALJ is unconstitutionally protected by multiple layers of removal. The appropriate remedy for these violations is to enjoin the defendants from continuing the unlawful administrative proceedings.

In support of this request, Plaintiffs state the following:

**PARTIES**

1. Plaintiff Millennia Housing Management, Ltd. is an Ohio limited liability company.

2. Plaintiff Frank Sinito is a natural person residing in Lake County, Ohio, and is the President and Chief Executive Officer of Millennia Housing Management, Ltd.

3. Plaintiff Cherry Estates LP is an Ohio limited partnership.

4. Plaintiff Cherry Estates Investment, LLC is an Ohio limited liability company.

5. Plaintiff Flushing Elmcrest Limited Dividend Housing Association Limited Partnership is a Michigan limited partnership.

6. Plaintiff Elmcrest Investment, LLC is an Ohio limited liability company.

7. Plaintiff Covenant Apartments LP is an Ohio limited partnership.

8. Plaintiff Covenant Apartments Investment, LLC is an Ohio limited liability company.

9. Plaintiff Covenant Project, LLC is an Ohio limited liability company.

10. Plaintiff Bethel Tower Limited Dividend Housing Association Limited Partnership is a Michigan limited partnership.

11. Plaintiff Bethel Tower Investment, LLC is an Ohio limited liability company.

12. Plaintiff Trail West, Ltd. is an Ohio limited company.

13. Plaintiff Trail West Investment, LLC is an Ohio limited liability company.

14. Plaintiff Trail West Housing Partners, Inc. is an Ohio corporation with its headquarters in Cuyahoga County, Ohio.

15. Plaintiff Robinson Heights Apartments I, LP is an Ohio limited partnership.

16. Plaintiff Robinson Heights Apartments Investment I, LLC is an Ohio limited liability company.

17. Plaintiff Hickory Creek Estates, Ltd. is an Ohio limited company.

18. Plaintiff Hickory Creek Estates Investment, LLC is an Ohio limited liability company.

19. Plaintiff Sherman Thompson OH, TC L.P. is an Ohio limited partnership.

20. Plaintiff Sherman Thompson Towers Investment, LLC is an Ohio limited liability company.

21. Plaintiff Highland Place Associates I, Ltd. is an Ohio limited company.

22. Plaintiff Highland Place Investment I, LLC is an Ohio limited liability company.

23. Plaintiff Petosky Riverview Limited Dividend Housing Association Limited Partnership is a Michigan limited partnership.

24. Plaintiff Petoskey Riverview Investment, LLC is an Ohio limited liability company.

25. Plaintiff Oakdale Estates, Ltd. is an Ohio limited company.

26. Plaintiff Oakdale Estates II Investment, LLC is an Ohio limited liability company.

27. Plaintiff Oakdale Estates Investment GP, LLC is an Ohio limited liability company.

28. Plaintiff Oakdale Estates Investment LLC is an Ohio limited liability company.

29. Plaintiff Morning Star Tower, Ltd. is an Ohio limited company.

30. Plaintiff Morning Star Tower Investment, LLC is an Ohio limited liability company.

31. Plaintiff International Towers I Ohio, Ltd. is an Ohio limited company.

32. Plaintiff International Tower Investment I, LLC is an Ohio limited liability company.

33. Plaintiff YMHA Housing Preservation, LLC is an Ohio limited liability company.

34. Plaintiff Kingsbury Tower I, Ltd. is an Ohio limited company.

35. Plaintiff Kingsbury Tower Investment I, LLC is an Ohio limited liability company.

36. Plaintiff Hunter's Run Investment, LLC is an Ohio limited liability company.

37. Plaintiff Halton HR Investors, LLC is an Ohio limited liability company.

38. Plaintiff HWFB HR Investment, LLC is an Ohio limited liability company.

39. Plaintiff Halton Springs Investments, LLC is an Ohio limited liability company.

40. Defendant HUD is an executive department of the United States Government, which is headquartered in Washington, D.C. and operates in the state of Ohio.

41. Defendant Scott Turner is a natural person who is the Secretary of HUD and is sued only in his official capacity.

42. Defendant Julia Gordon is a natural person who is the Assistant Secretary for Housing – Federal Housing Commissioner of HUD, and is sued only in her official capacity.

43. Defendant Scott Knittle is a natural person who is the Principal Deputy General Counsel of HUD and is sued only in his official capacity.

44. Defendant Alexander Fernandez-Pons is a natural person who is an Administrative Law Judge (ALJ) for the United States Department of Housing and Urban Development, and is sued only in his official capacity.

## JURISDICTION AND VENUE

45. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 because the dispute concerns a federal question that arises under the Constitution.

46. This Court has authority to grant declaratory and injunctive relief under the United States Constitution, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, the Administrative Procedure Act, 5 U.S.C. §§ 701-706, Fed. R. Civ. P. 65, and Fed. R. Civ. P. 57, and this Court's inherent equitable powers.

47. Venue is proper pursuant to 28 U.S.C. § 1391(e)(1) because Defendants are officers of an agency of the United States and a substantial part of the events giving rise to the claim occurred in Cleveland, Ohio.

## FACTUAL BACKGROUND

48. HUD is a federal agency which was established as a Cabinet Department by the Department of Housing and Urban Development Act, 42 U.S.C. §§ 3531 *et seq*.

49. Pursuant to Section 223(f) of the National Housing Act, HUD is authorized to insure certain mortgages, including for the purchase or refinancing of existing multifamily housing projects. 12 U.S.C. § 1715n(f).

50. Plaintiffs are entities which own and/or operate a variety of HUD insured properties pursuant to 12 U.S.C. §§ 1715*l* and 1715n.

51. Each of the Plaintiffs are either the owner and mortgagor of a HUD-financed property, a general partner in the entity that owns the property, the management agent for the property, or the ultimate beneficial owner of the entities. For example, Cherry Estates, a HUD-financed property in Kent, Ohio, is owned by Cherry Estates, LP, which is also the mortgagee for the property. Cherry Estates Investment, LLC, is the general partner of Cherry Estates, LP. Frank Sinito is the limited partner of Cherry Estates, LP, President and member of Cherry Estates Investment, LLC, and owner of Millennia Housing Management, Ltd., which is the management agent for Cherry Estates.

52. Each of the properties at issue in the administrative proceedings are subject to a Regulatory Agreement. The Regulatory Agreement is a contract between the borrower and HUD that governs each project and HUD's involvement. An exemplar Regulatory Agreement from the Cherry Estates project is attached hereto as Exhibit A ("Exemplar Agreement"). The Regulatory Agreements for each project differ in some respects, but every Regulatory Agreement provides that except for certain authorized purposes, disbursements from project funds – meaning a transfer of money from the project to another person or entity– may not be made except upon the written consent of HUD. (*See* Exemplar Agreement, ¶¶ 10(d), 14).

53. In addition to the contractual provision prohibiting unauthorized disbursements, a similar prohibition exists in the United States Code. It provides that neither the mortgagor nor

7

certain individuals or entities affiliated with the mortgagor may knowingly and materially "assign[], transfer, dispos[e], or . . . pay[] out any [project] funds . . . without the prior written approval of the Secretary." 12 U.S.C. § 1735f-15(c)(1)(B)(ii). This provision is substantially similar to the disbursement restrictions in the Regulatory Agreement.

54. The Code of Federal Regulations authorizes HUD to initiate a civil money penalty action for a violation of 12 U.S.C. § 1735f-15(c)(1)(B). 24 C.F.R. §30.45(c).

55. Pursuant to 24 C.F.R. § 30.85, the Assistant Secretary for Housing-Federal Housing Commissioner, or his designee, determines whether HUD will seek a civil monetary penalty for an alleged violation. If the Assistant Secretary for Housing-Federal Housing Commissioner or his designee determines to seek a penalty, HUD must issue a complaint to be filed with the HUD Office of Hearings and Appeals. 24 C.F.R. § 30.85(b).

56. The hearing pursuant to any action filed by HUD must be conducted "in accordance with the procedures applicable to hearings in accordance with the Administrative Procedure Act ("APA")." 24 C.F.R. § 30.95. Those regulations provide that the hearing will be presided over by an ALJ or Administrative Judge, 24 C.F.R. § 26.2, who finds facts and determines whether the claims are supported by the evidence presented. 24 C.F.R. § 26.25. The Rules of Evidence do not apply at the hearing. *Id.* at § 26.24(a).

57. These ALJs are appointed by the Secretary of HUD and are not Article III judges. The tribunals in which they conduct their hearings are not Article III tribunals. ALJs are subject to at least two layers of removal.

58. The OHA nevertheless decides issues and controversies that mirror claims which may be brought at common law, and which must be heard by United States District Courts.

59. Proceedings before the OHA do not permit a trial by jury.

60. Between February 21, 2024, and April 10, 2024, HUD filed sixteen (16) complaints in the OHA against Plaintiffs (the "Complaints"). The Complaints seek to impose civil money penalties of $59,316 (the maximum amount permitted by law) for each alleged violation of the prohibition against unauthorized distributions under 12 U.S.C. § 1735f-15 and 24 C.F.R. Part 30. 24 C.F.R. §30.45(g) (Feb. 15, 2023). HUD is asking for the maximum amount authorized by the statute. In total, HUD seeks more than $7 million in civil money penalties against Plaintiffs, despite that Plaintiffs are not entitled to any of the protections of an Article III court or a trial by jury.

61. Each of the Complaints allege a breach of the Regulatory Agreement. Specifically, the Complaints allege that (a) the projects at issue are subject to the Regulatory Agreement (*e.g.,* Exemplar Complaint, Ex. A., at ¶ 20); (b) that the Plaintiffs were subject to the terms of the Regulatory Agreement (*id.* at ¶¶ 26, 28, 30); (c) that the Regulatory Agreements were premised on Plaintiffs' promise to abide by the terms of the Regulatory Agreement (*id.* at ¶¶ 35, 42); (d) that HUD's assessment of whether to insure the project depended on, among other things, its ability to excise its contractual right to review and approve any distributions before payment (*id.* at ¶ 35); (e) Plaintiffs violated the terms of the Regulatory Agreement and denied HUD the benefit of its bargain (*id.* at ¶ 36); and (f) Plaintiffs "failed to comply with the statutory, regulatory, and contractual prohibition against distributions." (*Id.* at ¶ 40).

62. Each of the Complaints sound in contract.

63. Each of the Complaints seek "significant penalties," which HUD alleges "are necessary to deter multifamily mortgagors as well as others from committing similar violations," (*id.* at ¶ 56), and "so that mortgagors do not form the belief that they can fail to comply with statutory, regulatory, and contractual obligations with impunity." (*Id.* at ¶ 59).

9

64. HUD thus seeks money penalties not solely to restore the status quo, but to punish and deter.

65. On April 18, 2024, Plaintiffs, through undersigned counsel and with the consent of HUD, requested consolidation of the Complaints into one single action.[1]  In consolidating the actions, the ALJ found that each Complaint alleged that Plaintiffs made unauthorized distributions of project assets.

66. Unless this action is enforced, Plaintiffs will be irreparably harmed by being forced to endure an unconstitutional proceeding in a tribunal that is not an Article III court and without the benefit of trial by jury.

### Count I – Usurpation of the Judicial Power in Violation of Article III of the Constitution

67. Plaintiffs incorporate by reference all of the preceding materials as though fully set forth herein.

68. On June 27, 2024, the United States Supreme Court issued its decision in *Securities & Exchange Commission v. Jarkesy*, 144 S. Ct. 2117 (2024), which held that the S.E.C.'s use of its administrative tribunal to seek civil penalties for securities fraud was unconstitutional. *Id.* at 2136.  In so holding, the Court explained that the "Constitution prohibits Congress from withdrawing from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law." *Id.* at 2131.  In using the term "common law," the Framers meant "suits in which *legal* rights were to be ascertained and determined." *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446 (1830) (emphasis original); *see also Jarkesy*, *supra*, at 2128 (noting

---

[1] The consolidated action pending before HUD OHA involves case numbers 24-JM-0150-CM-005, 24-AF-0151-CM-006, 24-AF-0171-CM-008, 24-AF-0172-CM-009, 24-AF-0173-CM-010, 24-AF-0181-CM-011, 24-AF-0182-CM-012, 24-AF-0186-CM-013, 24-AF-0187-CM-014, 24-AF-0188-CM-015, 24-AF-0189-CM-016, 24-AF-0194-CM-017, 24-AF-0215-CM-018, 24-AF-0216-CM-019, 24-AF-0223-CM-020, and 24-AF-0224-CM-021.

that common law means "all suits which are not of equity or admiralty jurisdiction, whatever peculiar form which they may assume."). Whether or not a claim is created by statute is immaterial; *Jarkesy,* 144 S. Ct. at 2128, instead, "what matters is the substance of the action, not where Congress has assigned it." *Id.* at 2135.

69. The judicial power of the United States is solely "vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. CONST., art. III, § 1. "Under the basic concept of separation of powers . . . the judicial Power of the United States cannot be shared with the other branches." *Jarkesy*, *supra*, at 2131 (quoting *United States v. Nixon*, 418 U.S. 683, 704 (1974) (internal quotations omitted)). Accordingly, once a suit at common law concerning private rights "is brought within the bounds of federal jurisdiction, an Article III court must decide it, with a jury if the Seventh Amendment applies." *Id.* (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

70. A two-stage inquiry is used to determine whether an action based on statute is one that determines legal (as opposed to equitable) rights: first, the Court must inquire as to where the claim would have been brought in the courts of England prior to the merger of law and equity, and second, whether the remedy sought is legal or equitable in nature. The second part of the analysis carries greater weight than the first. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989); *Jarkesy*, 144 S. Ct. at 2129.

71. "Actions by the Government to recover civil penalties under statutory provisions . . . [are] viewed as a type of action in debt requiring a trial by jury." *Jarkesy*, 144 S. Ct. at 2129 (citing *Tull v. United States*, 481 U.S. 412, 418-419 (1987). Additionally, the "substance" of the claims brought by HUD are claims for breach of contract. *See, e.g.*, Exemplar Complaint at ¶¶ 35, 36, 40, 42 ("A key requirement of HUD insuring the mortgage was Respondents' promise to

11

comply with the terms of the Regulatory Agreement."). A contract claim seeking a monetary remedy has historically been considered a claim at common law. *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring).

72. The remedy sought by HUD – the more important consideration – is likewise legal in nature. "Civil penalties are a remedy at common law that could only be enforced in courts of law." *Jarkesy*, 144 S. Ct. at 2129. Only if the monetary remedy is *solely* intended to restore the status quo can it be considered remedial. *Id.*

73. HUD seeks a civil money penalty pursuant to 24 C.F.R. § 30.80, which prescribes that nine factors should be considered in determining whether a money penalty should be imposed: (1) the gravity of the offense; (2) the history of prior offenses; (3) the ability to pay a penalty; (4) injury to the public; (5) benefits received by the violator; (6) benefit to other persons; (7) deterrence of future violations; (8) degree of the violator's culpability; and (9) other matters as justice may require. 24 C.F.R. § 30.80. A number of these factors – most obviously history of prior offenses, deterrence of future violations and the degree of the violator's culpability – go to "culpability, deterrence, and recidivism." These are punitive penalties and therefore legal in nature. *Jarkesy*, *supra*, at 2129-2130.

74. The HUD Complaints also seek to determine private rights. "Matters concerning private rights may not be removed from Article III courts." *Jarkesy*, 144 S. Ct. at 2142. The "hallmark" of private rights is "whether it is made of the stuff of the traditional actions at common law tried by the Courts at Westminster in 1789. . . If the suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is mandatory." *Id.* A breach of contract is among "the stuff of the traditional actions at common

12

law tried by the courts as Westminster in 1789." *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring).

75. "Article III could neither serve its purpose in the system of checks and balances nor preserve the integrity of judicial decision-making if the other branches of the Federal Government could confer the Government's 'judicial Power' on entities outside Article III." *Stern*, 564 U.S. at 484. The HUD OHA is not an Article III court, and neither the ALJ assigned to preside over Plaintiffs' hearing nor the Secretary of HUD are Article III judges.

76. HUD and the HUD OHA therefore lack any lawful power to decide legal cases and controversies involving private rights, such as those HUD has attempted to bring against Plaintiffs.

77. The HUD OHA is without lawful jurisdiction to hear legal cases and controversies involving private rights.

78. HUD is violating the separation of powers by claiming for itself the authority to decide matters that are solely within the province of the judiciary.

79. HUD's Complaints and the administrative proceedings in the OHA are subjecting Plaintiffs to an unconstitutional process and procedure, and Plaintiffs have been injured in the here and now by being forced to respond to claims and appear at a hearing before an unconstitutional and unlawful tribunal. Plaintiffs have been further injured in the here and now by being subjected to a proceeding before an ALJ, who is not an Article III judge. *Axon Enterprise, Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 191 (2023).

80. HUD is usurping the judicial Power of the United States by hearing and adjudicating legal cases involving private rights in an executive agency, thereby violating Article III of the Constitution. Unless enjoined, HUD will continue with its unconstitutional usurpation of power, violating Plaintiffs' constitutional rights and inflicting injury on Plaintiffs.

### Count II – The Structure of the HUD Office of Hearing and Appeals Violates the Seventh Amendment Because It Does Not Permit a Trial By Jury

81. Plaintiffs incorporate by reference all preceding materials as if fully set forth herein.

82. Where a suit at common law is brought within the bounds of federal jurisdiction, "an Article III court must decide it, *with a jury if the Seventh Amendment applies*." *Jarkesy*, 144 S. Ct. at 2131 (emphasis added).

83. The Seventh Amendment to the Constitution provides that in "suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST., amend VII.

84. The HUD actions are legal in nature and seek to adjudicate private rights. The HUD actions collectively seek over $7 million in civil penalties, and individually, each HUD action seeks more than twenty dollars in civil penalties.

85. The HUD OHA does not afford an option to proceed with a trial by jury. The APA does not permit trials by jury.

86. By bringing the actions in the HUD OHA, HUD is depriving Plaintiffs of their right to a trial by jury. "The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and 'should be scrutinized with the utmost care.'" *Jarkesy*, 144 S. Ct. at 2128.

87. The public has an interest in ensuring that entities are subjected to lawful and constitutional proceedings.

88. Plaintiffs have sought to raise these issues in the administrative proceedings, and HUD has refused to discontinue its unlawful and unconstitutional behavior. Indeed, HUD has objected to Plaintiffs' inclusion of the Seventh Amendment violation as a defense to the proceeding in their answers, and HUD has asserted that the ALJ does not have the power to rule

14

upon and address issues of constitutionality. (*See Respondent's Brief in Opposition to Government's Motion to Strike Affirmative Defenses* attached hereto as Exhibit B.) Accordingly, Plaintiffs are suffering an injury in the here and now by being subjected to an unconstitutional process and procedure that HUD refuses to discontinue. Unless enjoined, HUD will continue to violate Plaintiffs' Seventh Amendment rights.

89. HUD proceedings through the OHA do not afford Plaintiffs constitutional adjudication under Article III and the Seventh Amendment of the United States Constitution.

90. If HUD is not enjoined to halt all ongoing proceedings against Plaintiffs before the OHA, Plaintiffs will suffer irreparable harm.

91. Public policy has a well-established interest in preserving and protecting the constitutional rights of its citizens and upholding Supreme Court precedent.

### Count III – The Dual Layer, for Cause Removal Restrictions on the ALJ Violate the Article II Take Care Clause

92. Plaintiffs incorporate by reference all preceding materials as if fully set forth herein.

93. The executive Power of the United States is "vested in a President of the United States of America." U.S. CONST. art. II, § 1, cl. 1. This means that Article II confers on the president "the general administrative control of executing the laws." *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 492-493 (2010) (citing *Myers v. United States*, 272 U.S. 52, 164 (1925)). Therefore, "it is *his* responsibility to take care that the laws be faithfully executed." *Id.* at 493 (emphasis original). This responsibility requires the power to "remov[e] those for whom he cannot continue to be responsible." *Id.* (quoting *Myers*, 272 U.S. at 117). Accordingly, the President cannot "be restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer." *Id.* at 484.

15

94. An ALJ is an inferior officer of the United States. *Lucia v. SEC*, 585 U.S. 237, 248-249 (2018). HUD proceedings through the OHA, such as this one, are presided over by a HUD-appointed ALJ.

95. The ALJ presiding over this case may only be removed from his position "for good cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521(a). A member of the Merit Systems Protection Board, in turn, may be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

96. Because there are two layers of good cause removal restrictions, the statutes "withdraw[] from the President any decision on whether that good cause exists." *Free Enter. Fund*, 561 U.S. at 495. "The result is an [ALJ] that is not accountable to the President, and a President who is not responsible for the [ALJ]." *Id.* at 496.

97. By creating a dual-layer of good cause for removal protections, Congress has ensured that "neither the President, nor anyone directly responsible to him, nor even an officer whose conduct he may review only for good cause, has full control over the [ALJ]." *Id.* The dual-layer for cause removal protections unconstitutionally restrict the President's responsibility to take care that the laws are faithfully executed. Accordingly, any actions taken by the ALJ are unconstitutional.

98. In addition to improperly limiting the President's constitutional authority, the dual-layer removal restrictions allow for an administrative body that oversees regulated parties without the constitutionally required "degree of electoral accountability." *Collins v. Yellen*, 594 U.S. 220, 252 (2021) (citing *Free Enter. Fund*, 561 U.S. at 497-498).

99. Absent an injunction from this Court, Plaintiffs will be subjected to an unconstitutional process that requires them to submit to an unconstitutional proceeding presided

over by an ALJ who is improperly insulated from removal by a double layer of good cause protections. The complete structure of HUD's administrative process violates Article II of the Constitution. Subjecting Plaintiffs to such a process is a compensable here-and-now injury.

100. On February 20, 2025, the Acting Solicitor General, Sarah M. Harris, sent a letter to Senator Charles Grassley, President Pro Tempore, United States Senate, informing him that the Department of Justice had concluded that multiple layers of removal restrictions for ALJs violate the Constitution and that the Department would no longer defend them in court. (*See* Exhibit C).

101. As a result, the ALJ presiding over this case is unconstitutionally insulated from removal and oversight by the president. If plaintiffs are forced to participate in the administrative proceedings before an inferior officer that is improperly insulated from presidential oversight, they will suffer immediate and irreparable harm. *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 191 (2023) (holding that "having to appear in proceedings before an unconstitutionally insulated ALJ" is a "here-and-now" injury).

102. If HUD is not enjoined to halt all ongoing proceedings against Plaintiffs before the OHA and the unconstitutionally appointed ALJ, Plaintiffs will suffer irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

(a) This Court issue, as soon as practical, a preliminary injunction enjoining HUD and its agents, employees, and attorneys from:

(i) Further pursuing any existing claims or actions against Plaintiffs concerning the Complaints before HUD OHA; and

(ii) Pursuing any future action against Plaintiffs and/or any related individuals or any entity that is directly or indirectly, through one or more intermediaries, controls or is

17

controlled by, or under common control with, any Plaintiff for alleged violations of 12 U.S.C. § 1735f-15.

(b) A declaration that the HUD OHA has no jurisdiction over the claims brought against Plaintiffs;

(c) A declaration that the dual-layer good cause for termination protections for HUD ALJs are unconstitutional;

(d) An award for all reasonable attorneys' fees and costs that Plaintiffs may be entitled to under the law; and

(d) Such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Matthew D. Ridings
MARISA T. DARDEN (0098583)
MATTHEW RIDINGS (0079402)
JOHANES MALIZA (0086875)
ALAYNA K. BRIDGETT (0100297)
LAURYN T. ROBINSON (0101046)
**BENESCH, FRIEDLANDER, COPLAN &
   ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  mdarden@beneschlaw.com
           mridings@beneschlaw.com
           abridgett@beneschlaw.com
           lrobinson@beneschlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2025, I electronically filed this document with the Court by using the CM/ECF system, and that this document was distributed via the Court's CM/EF system.

/s/ Matthew Ridings