# **EXHIBIT B**

UNITED STATES OF AMERICA
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
OFFICE OF HEARINGS AND APPEALS

| | |
|---|---|
| **In the Matter of:**<br><br>Millennia Housing Management, Ltd., *et al.*<br><br>**Respondents.** | 24-JM-0150-CM-005;<br>24-AF-0151-CM-006;<br>24-AF-0171-CM-008;<br>24-AF-0172-CM-009;<br>24-AF-0173-CM-010;<br>24-AF-0181-CM-011;<br>24-AF-0182-CM-012;<br>24-AF-0186-CM-013;<br>24-AF-0187-CM-014;<br>24-AF-0188-CM-015;<br>24-AF-0189-CM-016;<br>24-AF-0194-CM-017;<br>24-AF-0215-CM-018;<br>24-AF-0216-CM-019;<br>24-AF-0223-CM-020;<br>24-AF-0224-CM-021. |

**RESPONDENTS' BRIEF IN OPPOSITION TO GOVERNMENT'S
MOTION TO STRIKE AFFIRMATIVE DEFENSES**

Respondents[1] respectfully file this Opposition to the United States Department of Housing's ("HUD") Motion to Strike Affirmative Defenses (the "Motion"). In support of their claims, Respondents state as follows:

**I.      INTRODUCTION**

HUD's Motion fails to appreciate the full import of the Supreme Court's ruling in

---

[1] Cherry Estates LP; Cherry Estates Investment, LLC; Flushing Elmcrest Limited Dividend Housing Association Limited Partnership; Elmcrest Investment, LLC; Covenant Apartments LP; Covenant Apartments Investment, LLC; Covenant Project, LLC; Bethel Tower Limited Dividend Housing Association Limited Partnership; Bethel Tower Investment, LLC; Trail West, Ltd.; Trail West Investment, LLC; Trail West Housing Partners, Inc.; Robinson Heights Apartments I, LP; Robinson Heights Apartments Investment I, LLC; Hickory Creek Estates, Ltd.; Hickory Creek Estates Investment, LLC; Sherman Thompson OH, TC, L.P.; Sherman Thompson Towers Investment, LLC; Highland Place Associates I, Ltd.; Highland Place Investment I, LLC; Petosky Riverview Limited Dividend Housing Association Limited Partnership; Petoskey Riverview Investment, LLC; Oakdale Estates, Ltd.; Oakdale Estates II Investment, LLC; Oakdale Estates Investment GP, LLC; Oakdale Estates Investment LLC; Morning Star Tower, Ltd.; Morning Star Tower Investment, LLC; International Towers I Ohio, Ltd.; International Tower Investment I, LLC; YMHA Housing Preservation, LLC; Kingsbury Tower I, Ltd; Kingsbury Tower Investment I, LLC; Hunter's Run Investment, LLC; Halton HR Investors, LLC; HWFB HR Investment, LLC; Halton Springs Investments, LLC; Millennia Housing Management, Ltd.; and Frank Sinito (collectively, "Respondents")

*Securities & Exchange Commission v. Jarkesy*, 144 S. Ct. 2117 (2024). HUD characterizes *Jarkesy* and Respondents' Answers as presenting this Court solely with a constitutional question. Although *Jarkesy* did address purely constitutional questions, it also resolved related issues of subject matter jurisdiction. As the Supreme Court explained, "[i]f a suit is in the nature of an action at common law, then the matter presumptively concerns private rights, and adjudication by an Article III court is *mandatory*." *Jarkesy*, 144 S. Ct. at 2132 (emphasis added). Respondents acknowledge that this Court is without power to decide constitutional questions, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994), but Respondents are entitled to assert constitutional defenses to preserve its arguments for appellate review. Moreover, deciding issues of subject matter jurisdiction *is* within the purview of this Court, and *Jarkesy* has brought subject matter jurisdiction to bear this case. Common law claims involving private rights may not be removed from Article III courts, *Jarkesy*, 144 S. Ct. at 2132 (citing *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856)), and because this matter concerns private rights, this Court lacks subject matter jurisdiction to hear this dispute. Accordingly, Respondents' defenses should not be stricken.

## II. STANDARD OF REVIEW

Motions to strike are generally disfavored among Federal courts and should not be granted absent a showing of prejudice. *See HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp. 2d 687, 689 (N.D. Ohio 2010) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir.1989)) ("Courts should disfavor motions to strike affirmative defenses because they potentially serve only to cause delay."); *Capitol Sprinkler Inspection, Inc. v. Guest Serv., Inc.*, 630 F.3d 217, 226 (D.C. Cir. 2011) (same). Indeed, striking a pleading or defense should be done sparingly by a Court because "[i]t is a drastic remedy to be resorted to only when required for the purposes of

justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 821-22 (6th Cir. 1953). As a result, "[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation." *GEOMC Co. v. Calmare Therapeutics Inc.,* 918 F.3d 92, 98 (2d Cir. 2019). Importantly, "[a] defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability." *Id*. In light of these preferences, "[i]f an affirmative defense is sufficient as a matter of law or if it presents substantial questions of fact or law, the motion should be denied." *Sec. & Exchange Comm'n v. Gulf & W. Industries, Inc.,* 502 F. Supp. 343, 345 (D.D.C. 1980) (citing *United States v. 416.81 Acres of Land*, 514 F.2d 627, 630 (7th Cir. 1975)). Furthermore, before this type of motion can be granted "the Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." *Id*. at 345.

### III. LAW AND ARGUMENT

#### a. Administrative Law Judges Can Decide Issues of Subject Matter Jurisdiction

HUD cannot meet the heavy burden associated with succeeding on a motion to strike. Administrative law judges ("ALJs") serving in HUD's Office of Hearing and Appeals are authorized to decide issues of subject matter jurisdiction. Pursuant to 24 C.F.R. § 26.2, this Court is authorized "[t]o consider and rule upon all procedural and other motions appropriate in adjudicative proceedings." Moreover, ALJs are explicitly permitted to "[r]ule on motions and other procedural matters." *See* 24 C.F.R. § 26.32. Accordingly, issues of subject matter jurisdiction fall squarely within the purview of this Court's authority as a tribunal. *See, e.g., PF Sunset Plaza, LLC v. United States Dept. of Hous. & Urban Dev.*, 60 F.4th 692, 696 (D.C. Cir. 2023) (discussing HUD ALJ's dismissal of complaint seeking the imposition of civil money penalties for lack of

3

subject matter jurisdiction); *Matter of U.S. Sec. Assocs., Inc. v. OFCCP,* Case No. 2012-OFC-00004, 2012 WL 5106048 (Sept. 17, 2012) (discussing ALJ's decision to dismiss contractor's complaint seeking a judgment for lack of subject matter jurisdiction). Notably, the ALJ presiding over this very dispute previously issued a ruling concerning subject matter jurisdiction and is entirely authorized to do the same here. *See United States Dept. of Housing & Urban Dev. v. Cameel Halim, et al.*, HUDALJ 11-F-075-LBP-1. There is nothing hindering the ALJ from resolving all jurisdictional issues presented by *Jarkesy* and outlined in the affirmative defenses.

      b. *Jarkesy* Presents Both a Jurisdictional Issue and a Seventh Amendment Issue

It has been settled law for nearly two centuries that Congress may not "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. at 284 (cited in *Jarkesy*, 144 S. Ct. at 2131). In other words, once a suit at common law is brought in the federal system, "an Article III court must decide it." *Jarkesy*, *supra* (citing *Stern v. Marshall*, 564 U.S. 462, 484 (2011)). The touchstone of whether a claim is a "suit at common law" is whether the claim is legal in nature, as opposed to equity, admiralty, or maritime, which traditionally were claims decided without a jury. *Id.* at 2128 (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)). Whether a claim is statutory in nature is immaterial. *Id.*

HUD's claim is a common law claim, and thus, "an Article III court must decide it." *Jarkesy*, *supra*, at 2131. The prototypical common law remedy is money damages, and where a party seeks money damages, that fact is "all but dispositive" in determining whether the matter is legal in nature, thus requiring adjudication by an Article III court. *Id.* at 2129. If a money penalty is designed to punish a wrongdoer, it is a legal remedy; only if its purpose is *solely* to restore the status quo can it be considered an equitable penalty. *Id.*

4

For example, HUD's Complaint regarding the Cherry Estates property seeks a money penalty of $593,160.00 based on alleged unauthorized distributions that total $169,000.00. (Cherry Estates Cmplt. at ¶¶ 69, 29). HUD's total money damages claim is 3.5 times the alleged actual "loss," strongly suggesting that the money penalty is indeed punitive and not intended to restore the status quo. Individual counts are even more stark: in Count 5, HUD seeks a $59,316.00 penalty for an alleged distribution of $5,000.00 – a ratio of nearly 12:1.[2] *Id.* at ¶ 39. In addition to the sheer amount of the penalties in comparison to the alleged distribution amounts, the CFR requires officials to determine nine factors when considering the amount of a money penalty to impose on a respondent:  (1) the gravity of the offense; (2) the history of prior offenses; (3) the ability to pay a penalty; (4) injury to the public; (5) benefits received by the violator; (6) benefit to other persons; (7) deterrence of future violations; (8) degree of the violator's culpability; and (9) other matters as justice may require. 24 C.F.R. § 30.80; Cherry Estates Cmplt., at ¶ 17. Of the nine factors, at least five relate to culpability, deterrence, or recidivism – all of which are legal considerations. *Jarkesy*, 144 S. Ct. at 2129. Because the money penalties are designed to punish and deter, "they are therefore 'a type of remedy at common law that could only be enforced in courts of law.'" *Id.* at 2130 (citing *Tull v. United States*, 481 U.S. 412, 422 (1987)). Accordingly, because this Court is not an Article III tribunal, it is without subject matter jurisdiction to hear HUD's claims. If this matter is ultimately brought by the appropriate agency in an Article III court, Respondents would have a right to a trial by jury under the Seventh Amendment.[3] *Id.*

---

[2] The United States Supreme Court has held in the context of punitive damages that few awards exceeding a double-digit ratio between punitive and compensatory damages will satisfy due process, and that ratios of 4:1 are "close to the line of constitutional impropriety." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Respondents allege, and do not waive in any way, that the CMP sought by HUD violates the Due Process Clause and the Excessive Fines Clause.

[3] An exception to the Article III requirement is if the claim seeks to vindicate purely public rights. Public rights are claims that were historically determined exclusively by the executive and legislative branches. *Jarkesy*, 144 S. Ct. at 2132. Creating statutory obligations and assigning to agencies the power to enforce these statutes, does not create a public right; instead, if the action resembles a traditional legal claim, it is a private rather than public right, and

5

      c.   <u>Respondents' Answers Give Notice of Their Intent to Assert a Challenge to the Proceedings Because the Dual-Layer, For Cause Removal Restrictions on the ALJ Violate the Take Care Clause.</u>

Although not technically a defense to the claims asserted by HUD, Respondents also included as part of their Answers the assertion that the proceeding is unconstitutional because the ALJ is unconstitutionally protected by two layers of removal restrictions, thereby improperly limiting the president's responsibility to take care that the laws are faithfully executed. *See Free Enter. Fund v. PCAOB*, 561 U.S. 477, 484 (2010) (holding that the president cannot be doubly restricted in his ability to remove an inferior officer); *Lucia v. S.E.C.*, 585 U.S. 237, 251 (2018) (holding that ALJs are inferior officers). Because HUD ALJs enjoy two levels of removal protection – they can only be removed or fired if the Merit Systems Protection Board determines that there is cause for termination, 5 U.S.C. § 7521(a), and the Merit Systems Protection Board members can themselves only be removed for cause, 5 U.S.C. § 1202(d) – the removal protections on HUD ALJs are unconstitutional.

The purpose of the pleading requirement for an affirmative defense "is to avoid surprise and undue prejudice to the plaintiff by providing her notice and the opportunity to demonstrate why the defense should not prevail." *Venters v. City of Delphi*, 123 F.3d 956, 967 (7th Cir. 1997). Accordingly, to preserve a claim, a party must put forward a position in the pre-trial statement in a manner sufficient to put the opposing party on notice and allow the trial court to consider its merits. *See Cripe v. City of San Jose,* 261 F.3d 877, 886 n. 9 (9th Cir. 2001) (refusing to hold that defendants waived an affirmative defense, because the court and plaintiffs were on notice of the real issue); *Arizona v. Components Inc.,* 66 F.3d 213, 217 (9th Cir. 1995) (noting that argument

---

Congress may not withdraw it from an Article III court. *Id.* at 2136. "What matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Id.* HUD's claim, at its core, is a contract claim. *E.g.*, Cherry Estates Cmplt. at ¶¶ 35, 41, 42. That is a traditional legal claim that creates a private right; thus, the public rights exception does not apply.

must be raised sufficiently for the court to rule on it). Here, Respondents endeavor to put this Court and HUD on notice of the constitutional defects with this proceeding, thereby preserving these issues for appeal and providing HUD with an opportunity to voluntarily correct its deficiencies. At this stage, Respondents simply request that this Court permit it to preserve these important constitutional issues for potential review.

IV. **CONCLUSION**

In light of the foregoing, Respondents respectfully request that this Court deny HUD's Motion to Strike Affirmative Defenses.

Respectfully submitted,

*/s/ Marisa Darden*
Marisa T. Darden
mdarden@beneschlaw.com
Alayna K. Bridgett
abridgett@beneschlaw.com
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF**
127 Public Square, Suite 4900
Cleveland, OH 44114
Phone: 216.363.4440

*Counsel for Respondents*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing *Respondents' Brief in Opposition to Government's Motion to Strike Affirmative Defenses* was served on the following parties via email on August 26, 2024:

Docket Clerk
Office of Hearings and Appeals
451 7th Street, S.W. Room, B-133
Washington, D.C. 20410
alj.alj@hud.gov

Shahrzad Nikoo, Esq.
Noah Mink, Esq.
Jennifer M. Grim, Esq.
U.S. Department of Housing and Urban Development
Office of Program Enforcement
451 7th St. SW, Room 10245
Washington, DC 20410
Office: 202-402-5099
Email: shahrzad.nikoo@hud.gov
        noah.mink@hud.gov
        jennifer.m.grim@hud.gov

*Government Counsel*

/s/ Marisa T. Darden
Marisa T. Darden

*Counsel for Respondents*