## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **MILLENNIA HOUSING MANAGEMENT LTD. ET AL,** | CASE NO. 1:24-CV-02084 |
| Plaintiff, | JUDGE DAN A. POLSTER |
| vs. | **JOINT STIPULATION OF FACTS AND CONVERSION TO PERMANENT INJUNCTIVE RELIEF** |
| **UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,** | |
| **and** | |
| **SCOTT TURNER, in his official capacity as Secretary of the United States Department of Housing and Urban Development,** | |
| **and** | |
| **JULIA GORDON, in her official capacity as Assistant Secretary for Housing – Federal Housing Commissioner, United States Department of Housing and Urban Development,** | |
| **and** | |
| **BRIAN MILLER, in his official capacity as Acting General Counsel, United States Department of Housing and Urban Development,** | |
| **and** | |
| **ALEXANDER FERNANDEZ-PONS in his official capacity as Administrative Law Judge, United States Department of Housing and Urban Development** | |
| Defendants. | |

**The above-named parties stipulate and agree as follows**:

1.      The parties have met and conferred and agree that no discovery is necessary in this matter, which presents a purely legal question with no triable issues of fact.  Accordingly, no evidentiary hearing is necessary in this matter.

2.      The parties consent, and have no objection to, this Court converting Plaintiffs' February 21, 2025, motion for preliminary injunction (Dkt. 14) to a motion for permanent injunction.  Similarly, Plaintiffs' motion to be filed on March 12, 2025, will be filed as a motion for permanent injunction.  FED. R. CIV. P. 65(a)(2); *United States v. McGee*, 714 F. 2d 607, 613 (6th Cir. 1983).  The parties do not object to the Court entering an order on the February 21, 2025 or the March 12, 2025 motion for a permanent injunction without holding an evidentiary hearing.

**The above-named parties further stipulate and agree to the following facts**:

1.      Millennia Housing Management, Ltd. is an Ohio limited liability company.

2.      Frank Sinito is a natural person residing in Lake County, Ohio, and is the President and Chief Executive Officer of Millennia Housing Management, Ltd.

3.      Cherry Estates LP is an Ohio limited partnership.

4.      Cherry Estates Investment, LLC is an Ohio limited liability company.

5.      Flushing Elmcrest Limited Dividend Housing Association Limited Partnership is a Michigan limited partnership.

6.      Elmcrest Investment, LLC is an Ohio limited liability company.

2

7. Covenant Apartments LP is an Ohio limited partnership.

8. Covenant Apartments Investment, LLC is an Ohio limited liability company.

9. Covenant Project, LLC is an Ohio limited liability company.

10. Bethel Tower Limited Dividend Housing Association Limited Partnership is a Michigan limited partnership.

11. Bethel Tower Investment, LLC is an Ohio limited liability company.

12. Trail West, Ltd. is an Ohio limited company.

13. Trail West Investment, LLC is an Ohio limited liability company.

14. Trail West Housing Partners, Inc. is an Ohio corporation with its headquarters in Cuyahoga County, Ohio.

15. Robinson Heights Apartments I, LP is an Ohio limited partnership.

16. Robinson Heights Apartments Investment I, LLC is an Ohio limited liability company.

17. Hickory Creek Estates, Ltd. is an Ohio limited company.

18. Hickory Creek Estates Investment, LLC is an Ohio limited liability company.

19. Sherman Thompson OH, TC L.P. is an Ohio limited partnership.

20. Sherman Thompson Towers Investment, LLC is an Ohio limited liability company.

21.     Highland Place Associates I, Ltd. is an Ohio limited company.

22.     Highland Place Investment I, LLC is an Ohio limited liability company.

23.     Petosky Riverview Limited Dividend Housing Association Limited Partnership is a Michigan limited partnership.

24.     Petoskey Riverview Investment, LLC is an Ohio limited liability company.

25.     Oakdale Estates, Ltd. is an Ohio limited company.

26.     Oakdale Estates II Investment, LLC is an Ohio limited liability company.

27.     Oakdale Estates Investment GP, LLC is an Ohio limited liability company.

28.     Oakdale Estates Investment LLC is an Ohio limited liability company.

29.     Morning Star Tower, Ltd. is an Ohio limited company.

30.     Morning Star Tower Investment, LLC is an Ohio limited liability company.

31.     International Towers I Ohio, Ltd. is an Ohio limited company.

32.     International Tower Investment I, LLC is an Ohio limited liability company.

33.     YMHA Housing Preservation, LLC is an Ohio limited liability company.

34.     Kingsbury Tower I, Ltd. is an Ohio limited company.

35.     Kingsbury Tower Investment I, LLC is an Ohio limited liability company.

36.     Hunter's Run Investment, LLC is an Ohio limited liability company.

37.     Halton HR Investors, LLC is an Ohio limited liability company.

38.     HWFB HR Investment, LLC is an Ohio limited liability company.

39.     Halton Springs Investments, LLC is an Ohio limited liability company.

40.     The United States Department of Housing and Urban Development ("HUD") is an executive department of the United States Government, which is headquartered in Washington, D.C. and operates in the state of Ohio.

41.     HUD is a federal agency which was established as a Cabinet Department by the Department of Housing and Urban Development Act, 42 U.S.C. §§ 3531 *et seq*.

42.     Congress enacted the National Housing Act ("Act") in 1934 out of concern for the declining stock of affordable housing.  12 U.S.C. §§ 1701, *et seq*.

43.     The Act created the Federal Housing Administration ("FHA"), which is now a component of HUD, and created insurance programs to encourage the construction of affordable multifamily housing.  *See, e.g.* 12 U.S.C. §§ 1713, 1715*l*, 1715n.

44.     Pursuant to Section 223(f) of the Act, HUD is authorized to insure certain mortgages, including for the purchase or refinancing of existing multifamily housing projects.  12 U.S.C. § 1715n(f).

45.     HUD's multifamily insurance programs can allow for more favorable interest rates and other terms than may otherwise be available by insuring lenders against the risk of loss from mortgage defaults.

46.     FHA-insured loans can encourage investment in higher-risk properties in underserved areas, in part by reducing developers' financing costs and assuming some or all of the interest rate risks that otherwise would be borne by lenders.

47.     FHA-insured mortgages can help sustain profitability of various multifamily projects that otherwise might be bypassed due to the higher financing costs.

48.     Mortgagors enter into Regulatory Agreements with HUD, under which the mortgagor agrees to comply with certain requirements.  Some provisions in the Regulatory Agreement reiterate statutory and regulatory provisions, but others state additional obligations.

49.     Mortgagors and their management agents also execute Project Owner's/Management Agent's Certifications ("POMAC").  POMACs include certifications that the signors will "comply with HUD requirements and contract obligations," and acknowledge that HUD "may seek additional civil money penalties to be paid by mortgagor through personal funds for: . . . [c]ertain specific violations of the Regulatory Agreements, the penalties could be as much as $25,000 per occurrence (12 U.S.C. 1735f-15)."[1]

50.     Section 537 of the National Housing Act provides that HUD may impose civil money penalties on a mortgagor or closely related party "that knowingly and materially" engages in "[a]ssignment, transfer, disposition, or encumbrance of any personal property of the project, including rents, other revenues, or contract rights, or paying out of any funds, except for reasonable

---

[1] The current penalty amount adjusted for inflation is $61,238 per occurrence. *See* Adjustment of Civil Monetary Penalty Amounts for 2024, 89 Fed. Reg. 13,614 (Feb. 23, 2024).

operating expenses and necessary repairs, without prior written approval of the Secretary."  12 U.S.C. § 1735f-15(c)(1)(B)(ii).

51.     Section 537 provides for administrative proceedings before the imposition of civil money penalties.  12 U.S.C. § 1735f-15(d)(1).  The proceedings are subject to the Administrative Procedure Act ("APA") and regulations governing such proceedings.  24 C.F.R. § 30.95.

52.     Congress enacted the original version of Section 537 as part of the Department of Housing and Urban Development Reform Act of 1989, Pub. L. No. 101-235, 103 Stat. 1987.  As part of the Act, HUD asked for and received statutory authority to bring administrative actions for civil money penalties. *See HUD Reform: Hearing before the Subcomm. on Hous. & Cmty. Dev. of the H. Comm. on Banking. Fin. & Urb. Affs.*, 101st Cong. at 1-2, 107-08 (1989).

53.     Before 1989, if a mortgagor violated HUD's requirements, the principal remedies were to declare the mortgage in default and to debar the mortgagor. *Id.* at 107, 261.  Taking these steps could result in HUD foreclosing on the property at a loss and paying an insurance claim to the lender, while the property itself would "deteriorate[] physically and financially, with the consequent reduction in services to tenants." *Id.* at 261.  Alternatively, HUD could ask the Department of Justice to bring a criminal action, if the conduct constitutes a criminal offense, could be proved beyond a reasonable doubt, and warranted sufficient prosecutorial resources. *See id.* at 107, 262.

54.     When HUD utilizes administrative proceedings to impose civil money penalties, it investigates, brings charges, and adjudicates those charges.

55.     Pursuant to 24 C.F.R. § 30.85, the Assistant Secretary for Housing-Federal Housing Commissioner, or his designee, determines whether HUD will seek civil monetary penalties for an alleged violation.  If the Assistant Secretary for Housing-Federal Housing Commissioner or his designee determines to seek a penalty, HUD must issue a complaint to be filed with the HUD Office of Hearings and Appeals.  24 C.F.R. § 30.85(b).

56.     HUD must first provide a "Prepenalty Notice" to a potential respondent that identifies specific alleged violations and the maximum potential penalty, and inviting the submission of a response within 30 days for the agency to consider before any complaint is filed. *See* 24 C.F.R. § 30.70.

57.     After the 30-day response period, HUD may file a complaint that sets forth the factual and legal basis for the penalty, states the amount sought, and informs the respondent of its right to request a hearing in writing within 15 days. *Id.* § 30.85.

58.     If the respondent requests a hearing, it must submit an answer to the complaint, and the proceeding before the administrative law judge ("ALJ") begins. *Id*. §§ 30.90, 30.95. Either party can appeal the ALJ's determination to the Secretary.  *Id.* § 26.52(a), (k); *see also* 12 U.S.C. § 1735f-15(d)(1)(C).  After exhausting these administrative remedies, judicial review is available to the penalized party who may seek review of the final agency action in the appropriate federal court of appeals. *Id.* § 1735f-15(e).

59.     The hearing pursuant to any action filed by HUD must be conducted "in accordance with the procedures applicable to hearings in accordance with the Administrative Procedure Act ("APA")." 24 C.F.R. § 30.95.  Those regulations provide that the hearing will be presided over by an ALJ, 24 C.F.R. § 26.32, who finds facts, determines conclusions of law, and determines whether

the claims are supported by the evidence presented.  24 C.F.R. §§ 26.45(e), 26.50.  The Federal

Rules of Evidence "provide guidance" to the ALJ, but are not binding.  *Id.* at § 26.47.

60.     These ALJs are appointed by the Secretary of HUD and are not Article III judges.

The tribunals in which they conduct their hearings are not Article III tribunals.

61.     Proceedings before the Office of Hearings and Appeals ("OHA") do not permit a

trial by jury.

62.     If upheld on appeal to the Secretary of Housing and Urban Development, HUD's

final decision is subject to review by a court of appeals.  *See* 12 U.S.C. § 1735f-15(e)(1).

63.     The ALJ presiding over this case may be removed from his position only "for good

cause established and determined by the Merit Systems Protection Board." 5 U.S.C. § 7521(a).

64.     A member of the Merit Systems Protection Board may be removed by the President

only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

65.     Plaintiffs are entities which own and/or operate a variety of HUD insured properties

pursuant to 12 U.S.C. §§ 1715l and 1715n.

66.     Plaintiff Frank Sinito and his affiliated entities develop, own, and manage

multifamily housing projects across the country.  Doing business as the Millennia Companies,

Sinito's enterprise has over 200 properties in its portfolio.  Many of these properties have FHA-

insured mortgages and other HUD contracts, including all 16 involved in the challenged

administrative action.  These properties are all managed by Plaintiff Millennia Housing

Management, Ltd., and owned by single-asset entities in which Sinito has a direct or indirect

ownership stake.  Each of the remaining plaintiffs is either the mortgagor-owner entity of one of these properties or a partner in a mortgagor-owned entity.  Compl. ¶ 49, Dkt. No. 1.

67.     Each of the Plaintiffs are either the owner and mortgagor of a HUD-financed property, a general partner in the entity that owns the property, the management agent for the property, or the ultimate beneficial owner of the entities.

68.     All sixteen (16) properties at issue are subject to a POMAC and a Regulatory Agreement.

69.     Twenty-one[2] of the thirty-nine Plaintiffs have executed a POMAC with HUD containing the following language: "HUD may seek additional civil money penalties to be paid by mortgagor through personal funds for: . . . [c]ertain specific violations of the Regulatory Agreement, the penalties could be as much as $25,000 per occurrence (12 U.S.C. 1735f-15)."[3]

70.     Of the eighteen Plaintiffs who have not entered into a POMAC, ten[4] have entered into Regulatory Agreements, which include the following general obligations: mandating that the "[b]orrower shall comply with all applicable: laws; ordinances; regulations; requirements of any Governmental Authority"; providing that "HUD shall be entitled to invoke any remedies available

---

[2] Frank T. Sinito; Millennia Housing Mgmt Ltd.; Cherry Estates LP; Cherry Estates Investment, LLC; Highland Place Associates I, Ltd.; Petosky Riverview LDHA LP; Hunter's Run Investment, LLC; Halton HR Investors, LLC; Hickory Creek Estates, Ltd.; International Towers I Ohio, Ltd.; Bethel Tower LDHA LP; Trail West, Ltd.; Covenant Apartments LP; Covenant Apartments Investment, LLC; Sherman Thompson OH, TC LP; Robinson Heights Apartments I, LP; Oakdale Estates Investment LLC; Oakdale Estates II Investment, LLC; Kingsbury Tower I, Ltd.; Flushing Elmcrest LDHA LP; and Morning Star Tower, Ltd.
[3] Flushing Elmcrest LDHA LP; and Morning Star Tower, Ltd. The current penalty amount adjusted for inflation is $61,238 per occurrence. *See* Adjustment of Civil Monetary Penalty Amounts for 2024, 89 Fed. Reg. 13,614 (Feb. 23, 2024).
[4] Bethel Tower Investment, LLC; Robinson Heights Apartments Investment I, LLC; Elmcrest Investment, LLC; Halton Springs Investments, LLC; International Tower Investment I, LLC; Morning Star Tower Investment, LLC; Oakdale Estates Investment GP, LLC; Oakdale Estates, Ltd.; Petoskey Riverview Investment, LLC; and, Kingsbury Tower Investment I, LLC.

by law to redress any breach or to compel compliance by Borrower with these requirements, including any remedies available hereunder"; and, defining "Program Obligations" as "all applicable statutes and any regulations issued by the Secretary pursuant thereto that apply to the Project . . . ."

71.     The remaining eight Plaintiffs have not signed a POMAC or a Regulatory Agreement containing either the language in Paragraph 69 or 70.[5]

72.     Between February 21, 2024, and April 10, 2024, HUD filed sixteen (16) complaints in the OHA against Plaintiffs (the "Complaints").  The Complaints seek to impose civil money penalties of $59,316 (the maximum amount permitted by law) for each alleged violation of the prohibition against unauthorized distributions under 12 U.S.C. § 1735f-15 and 24 C.F.R. Part 30. 24 C.F.R. §30.45(g) (Feb. 15, 2023). In total, HUD seeks more than $7 million in civil money penalties against Plaintiffs.

73.     The Complaints triggered the current administrative proceedings before the OHA.

74.     Each of the Complaints alleges a violation of 12 U.S.C. § 1735f-15(c)(1)(B)(ii), which prohibits distributions of project funds without HUD's prior written approval, a prohibition which is echoed in the Regulatory Agreements.

75.     The ALJ presiding over this matter is Alexander Fernández-Pons.

76.     24 C.F.R. § 30.80 sets forth the factors to be considered in determining the amount of civil money penalties to assess.  The factors applicable here are:  (1) the gravity of the offense;

---

[5] Covenant Project, LLC; Trail West Investment, LLC; Trail West Housing Partners, Inc.; Hickory Creek Estates Investment, LLC; Sherman Thompson Towers Investment, LLC; Highland Place Investment I, LLC; YMHA Housing Preservation, LLC; and, HWFB HR Investment, LLC.

(2) the history of prior offenses; (3) the ability to pay a penalty; (4) injury to the public; (5) benefits received by the violator; (6) benefit to other persons; (7) deterrence of future violations; (8) degree of the violator's culpability; (9) any injury to tenants; and (10) other matters as justice may require. 24 C.F.R. § 30.80.

77.     Plaintiffs filed initial answers to each of the Complaints on May 22, 2024. Plaintiffs filed Amended Answers to each Complaint on August 1, 2024.

78.     On April 18, 2024, Plaintiffs, through undersigned counsel and with the consent of HUD, requested consolidation of the Complaints into one single action.[6]  The complaints were consolidated by the ALJ on May 2, 2024.  In consolidating the actions, the ALJ found that each Complaint alleged that Plaintiffs made unauthorized distributions of project assets.

79.     As far as the parties are aware, the President has not attempted to remove ALJ Fernández-Pons from his position.

80.     As far as the parties are aware, the President has not made a public statement expressing displeasure with actions taken by ALJ Fernández-Pons.

81.     As far as the parties are aware, the President has not stated that he wants to remove ALJ Fernández-Pons.

82.     On February 20, 2025, the Acting Solicitor General, Sarah M. Harris, sent a letter to Senator Charles Grassley, President Pro Tempore, United States Senate, informing him that the

---

[6] The consolidated action pending before HUD OHA involves case numbers 24-JM-0150-CM-005, 24-AF-0151-CM-006, 24-AF-0171-CM-008, 24-AF-0172-CM-009, 24-AF-0173-CM-010, 24-AF-0181-CM-011, 24-AF-0182-CM-012, 24-AF-0186-CM-013, 24-AF-0187-CM-014, 24-AF-0188-CM-015, 24-AF-0189-CM-016, 24-AF-0194-CM-017, 24-AF-0215-CM-018, 24-AF-0216-CM-019, 24-AF-0223-CM-020, and 24-AF-0224-CM-021.

Department of Justice had concluded that multiple layers of removal restrictions for ALJs violate the Constitution and that the Department would no longer defend them in court.  *See* Amend. Compl, Ex. C – Acting Solicitor General Letter.

83.     The Acting Solicitor General wrote: "I am writing to advise you that the Department of Justice has concluded that multiple layers of removal restrictions for administrative law judges (ALJs) in 5 U.S.C. 1202(d) and 7521(a) violate the Constitution, that the Department will no longer defend them in court, and that the Department has taken that position in ongoing litigation." *Id.*

84.     The Acting Solicitor General stated, pursuant to *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), the Supreme Court determined that granting "multilayer protection from removal" to executive officers "is contrary to Article II's vesting of the executive power in the President." *Id.* at 484.

85.     The President may not "be restricted in his ability to remove a principal [executive] officer, who is in turn restricted in his ability to remove an inferior [executive] officer." *See* Amend. Compl, Ex. C – Acting Solicitor General Letter.

86.     The Solicitor General further concluded that 5 U.S.C. § 7521(a) provides that a federal agency may remove an ALJ "only for good cause established by the Merit Systems Protection Board on the record after opportunity for hearing before the Board."  *Id.*

87.     5 U.S.C. § 1202(d) provides that a member of the Board "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office." *Id.*

88.     The Solicitor General concluded that "[c]onsistent with the Supreme Court's decision in *Free Enterprise Fund*, the Department has determined that those statutory provisions violate Article II by restricting the President's ability to remove principal executive officers, who are in turn restricted in their ability to remove inferior executive officers." *Id.*

Respectfully submitted,

_____

*s/ Matthew D. Ridings*
_____

MARISA T. DARDEN (0074258)
MATTHEW RIDINGS (0079402)
JOHANES C. MALIZA (0086875)
**BENESCH, FRIEDLANDER, COPLAN &
    ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  mdarden@beneschlaw.com
        mridings@beneschlaw.com
        jmaliza@beneschlaw.com

*Counsel for Plaintiffs*


*s/ Pardis Gheibi*

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

CHRISTOPHER HALL
Assistant Branch Director

PARDIS GHEIBI (D.C. Bar No. 90004767)
Trial Attorney; U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.

14

Washington, D.C. 20005
Tel.: (202) 305-3246
Email: pardis.gheibi@usdoj.gov

*Counsel for Defendants*