UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

MILLENNIA HOUSING                )
MANAGEMENT, Ltd., et al.,        )
                                 )  Case No. 1:24-cv-2084-DAP
          Plaintiffs,            )
                                 )  Cleveland, Ohio
        vs.                      )  Monday, February 24, 2025
                                 )  2:33 p.m.
U.S. DEPARTMENT OF HOUSING       )
AND URBAN DEVELOPMENT,           )  STATUS CONFERENCE VIA
                                 )  VIDEOCONFERENCE
          Defendant.             )
_____)


REPORTER'S TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE DAN A. POLSTER,
SENIOR UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiffs:

      BENESCH FRIEDLANDER COPLAN & ARONOFF - CLEVELAND
      BY:  MARISA T. DARDEN, ESQ.
           MATTHEW D. RIDINGS, ESQ.
      127 Public Square, Suite 4900
      Cleveland, OH 44114
      (216) 363-4440

(Appearances continued on Page 2)

COURT REPORTER:

      Heather K. Newman, RMR, CRR
      U.S. District Court, Northern District of Ohio
      801 West Superior Avenue, Court Reporters 7-189
      Cleveland, OH 44113
      (216) 357-7035 or heather_newman@ohnd.uscourts.gov

Proceedings reported by machine shorthand; transcript
produced by computer-aided transcription.

APPEARANCES CONTINUED:

For the Defendant:

    U.S. DEPARTMENT OF JUSTICE - L STREET
    BY:  PARDIS GHEIBI, ESQ.
    1100 L Street NW, Suite 11526
    Washington, DC 20005
    (202) 305-3246

                    *   *   *   *   *

CLEVELAND, OHIO; MONDAY, FEBRUARY 24, 2025; 2:33 P.M.

--oOo--

P R O C E E D I N G S

LAW CLERK: So, we have Heather on as our court reporter today. For the plaintiffs, we have Marisa Darden as well as Matthew Ridings. Renee Weiss is on as well; she is general counsel for Millennia. And then Pardis Gheibi is here on behalf of the government.

THE COURT: Okay.

All right. Thanks for getting available.

This is a conference in Millennia vs. HUD, 1:24-cv-2084.

While I believe this case has been pending since November, I just received it late last week when Judge Brennan needed to recuse herself. And then late Friday, the plaintiff filed an amended complaint adding a significant new claim.

I've got a few questions. First, when, exactly, is the ALJ HUD hearing?

MS. DARDEN: Good afternoon, Your Honor, I believe that it's scheduled for June. Let me get the exact date for you.

(Brief pause in proceedings.)

MS. DARDEN: June 2nd through the 20th it's scheduled, and we have, you know, a number of discovery

deadlines prior to that.

THE COURT: All right. So, Marisa, discovery is proceeding?

MS. DARDEN: It is, Judge, yes.

THE COURT: All right. Okay.

All right. So. . . it's a little over three months away. No, wait a minute. March.

MS. DARDEN: That's right, Judge. March, April and May.

THE COURT: Yeah, a little over three months. I counted right.

All right. I want to conserve private resources and judicial resources. I know this is a motion for a preliminary injunction but it seems to me that we should convert this into a motion for a permanent injunction with some stipulated facts. I don't think that we need any discovery. The parties obviously didn't feel they need any -- needed any for the Seventh Amendment Article III claims and I doubt if they'll need it for the Article II claims on dual levels of -- dual layers of removal. So if that's the case, then I'll issue an order and it will be immediately appealable and I think that makes sense.

How does that sound from the plaintiffs and for the government?

MS. DARDEN: I see my co-counsel nodding,

which is a positive sign, so I think we'd be good with that, Judge.

Thank you.

THE COURT:  All right.

Pardis, what about from the government?

MS. GHEIBI:  Same with respect to the government.

Thank you, Your Honor.

THE COURT:  All right.  Okay.

So what I'll need is a stipulated set of facts that the parties want to refer to, which shouldn't be hard to do that.

There obviously had been no briefing yet on the dual insulation Article II claims because it was just filed, so we'll need that.

I have one factual question.  In the complaint, the plaintiffs have not alleged any actual harm of the kind discussed in the cases.  Am I correct that the plaintiffs don't have any evidence of actual harm from the structural defect?  I know you've alleged it's a here-and-now injury by being forced to appear in an unconstitutional proceeding, but the courts talk about, in most of the cases -- certainly all after-the-fact cases -- courts have not overturned a final agency order without a showing of actual harm, and I haven't found a single case where a plaintiff made that

showing.  So I just want to make sure that you're making the structural claim but you don't have any evidence of actual harm from the structural defect.

Is that right?

MR. RIDINGS:  Judge, if you could -- if you could clarify what you mean by actual harm.

THE COURT:  Well, it's described in the cases. I think Just- -- I think it was Justice Keating.  This would be evidence that the president tried to remove an ALJ or tried to remove a member of the MSPB and was blocked by a court order, or said he would do so but for the statute which requires him to have good cause.

MR. RIDINGS:  Your Honor, no, there is no -- there is no (unintelligible) to -- that the president has attempted to remove this administrative law judge or that the president has made a statement suggesting that he would otherwise do so.

THE COURT:  Okay.

MR. RIDINGS:  Yeah.

THE COURT:  Well, then, that would be in the stipulated facts.

Then would that -- to me, that would be the only factual question, and I don't see that we need any discovery on the Article II claim.  I mean, it should be pretty clear. You know, everyone knows ALJ's are subject to for cause

removal.  I assume HUD ALJ's are subject to for cause removal like everyone else, and we know about the MSPB.

So do we think we need any discovery on the Article II claim?

MR. RIDINGS:  I don't believe that we do, Your Honor.

MS. GHEIBI:  None from the government, Your Honor.

THE COURT:  Okay.  Well, that's what I thought so. . .

Now, my final question may be more complicated.  I need to know exactly what the government's position is going to be on this Article II claim based on, you know, the letter the plaintiffs attached from the SG to Senator Grassley, and I know there's a pending litigation in the Third Circuit.  And I think the government -- if I'm not mistaken, that the government, in that pending case, declined to defend the ALJ decision.  So sort of conceded there was a constitutional infirmity.  But argued that the plaintiffs had not shown any actual harm and therefore the injunction should be denied, or the decision should be affirmed.  In that case, there's no injunction -- it already happened -- so that the decision should be affirmed.  But, I guess, since I'm being called on to address the constitutionality of this structure, I want to make sure

that the government is going to be defending it and if not, I'll need to appoint someone to do so.

So, Pardis, have you run this up the flag pole and determined -- you know, you got this executive order that only the president and the Attorney General can announce what the law is for the executive branch.  Now. . . so have you determined what the litigating position is going to be?

MS. GHEIBI:  Thank you, Your Honor.

My understanding is that we will not be disputing or we will not be opposing plaintiffs' Article II -- the substance of that Article II claim, the Department of Justice will not be doing that, but we will still be opposing the motion that plaintiffs have not shown harm under *Collins.*  As Your Honor mentioned, that is required, the Supreme Court case from 2021 has stated that, so that's our position and our position -- and presumably the Court can reach -- if the Court agrees with us on the *Collins* question, there is not necessarily a need for the Court to reach the Article II question but, again, our position is that their claim sort of is fatal from the go because they haven't even attempted to satisfy *Collins*.

THE COURT:  Well, you're correct but just suppose, hypothetically, I disagree with both of your positions.  Now, let's just suppose -- I mean, almost all of the cases requiring a showing of harm are what I'll call

after the fact, retrospective. All right?

The one case I've found prospectively was a very recent one by my colleague Judge Michelson in the Eastern District of Michigan, and that was the Yapp -- *Yapp vs. NLRB*, September 2024. That was prospective. She denied the motion for a preliminary injunction and one of the principle things she cited was there was no showing or no allegation of actual harm. I can see that it -- that there could be a different standard. I mean, like in, you know, habeas cases. It's very hard to overturn a criminal conviction. You got to show, you know, actual harm that casts doubt on the outcome. So I can see why a court would require a showing of actual harm to overturn a decision but might not require it if it hasn't happened yet. I might say that that's a sufficient here-and-now injury. Now, I don't know, but that's theoretically possible.

So I don't -- I think if that's the government's position, I don't necessarily agree with it and so we'll have no one arguing that the present regime of ALJs and NSPB doesn't violate the Constitution and I'm certainly not going to make that showing without it being argued, so it seems to me I will need to appoint someone to argue that position.

MS. GHEIBI: Your Honor, the procedural posture I -- I'm not sure I can answer that question because I don't -- my understanding is that the letter was sent to

Congress, and I believe Congress can delegate someone. I'm not really sure how that interacts with --

THE COURT: No. I delegate someone. It's my case.

MS. GHEIBI: Okay.

THE COURT: I've got to decide this so I've got it -- I mean, look, it's what Justice Roberts did in the Affordable Care Act case when the government specifically declined to argue that the Affordable Care Act was constitutional under the Commerce Clause. They just argued the Tax Clause. And he said, you know, under our precedent, if there is any valid basis to uphold the law, we're supposed to do it.

MS. GHEIBI: Right.

THE COURT: And he asked -- he appointed someone and was -- he voted that way. That was determinative. So that's what I -- seems to me that's what I need to do.

If the government is going to take the -- is taking the position that it was un- -- it's unconstitutional, this proceeding on June the 2nd will be an unconstitutional proceeding, I've got to appoint someone who will argue that it will be constitutional. Because I think there are good arguments that it will be and I -- you know, I've read the -- I've read that Supreme Court case from 2010, 2011 and

the Supreme Court very specifically said we are not deciding -- we are not deciding the constitutionality of ALJs in independent agencies.  So I don't think you can read that case as holding that, as the SG seems to have done.

*Free Enterprise*.  I don't like to criticize an SG, but I read that *Free Enterprise* case carefully and on page 506, and again in the text and in note 10, the Court very specifically says we're not deciding constitutionality of ALJs.

So I don't know what the Supreme Court would do today, but I know that they didn't decide it in 2010 so I don't think you can just say that's the law.  And, you know, I don't -- I don't believe that's -- it's clearly decided, and there have been courts that have come out the other way so. . .

We'll go ahead -- I'll set a briefing -- I don't know, I'll set a briefing schedule and I've already inquired what I need to do to appoint someone and I will go about doing it fast.

MS. GHEIBI:  Understood, Your Honor.

All the government asks is that the briefing schedule provide us with sufficient time to sort of come to ground on what the government's position is and be able to respond. This is sort of a newly developed position, obviously, so there is a lot of internal fortition that needs to happen

and I will describe that plaintiffs had the ability to raise this argument --

THE COURT:  Well, that's another issue.

MS. GHEIBI:  -- and they haven't --

THE COURT:  That's another issue that I think I want briefed -- well, is the government going to raise the argument on both the Article III and then the Article II that it's untimely for seeking emergency relief?

MS. GHEIBI:  Correct.

THE COURT:  Because I think it's a valid argument.  I don't know what the case law --

MS. GHEIBI:  Right.

THE COURT:  -- is, but certainly this case has been pending a long time and I don't think the constitution has changed in the last year so, you know, I think both arguments could have been made and so -- so is the government going to raise that?

MS. GHEIBI:  Yes, Your Honor, and I'd like to point out that during the hearing before Judge Brennan, plaintiffs' counsel was specifically asked whether they're raising the Article II claim with respect to the preliminary injunction and they said they are not, that they're not relying on the Article II argument to seek a preliminary injunction, and we consider that to be an outright waiver of that argument with respect to seeking a preliminary

injunction and plan to raise the both untimely nature but, as you said, the ultimate first authority on this question is not the Department of Justice, is the courts, and as far as the courts are concerned, the case law has not changed.

THE COURT:  All right.  Well, so that's -- that will be raised.

MR. RIDINGS:  Your Honor, if I may.

THE COURT:  Yes.

MR. RIDINGS:  That's a true statement.  That is the question that was asked.  We also said we were specifically not waiving that issue and that we wanted to preserve it for later but we were not, at this time, seeking a preliminary injunction based on the Article II claim.

THE COURT:  Well --

MR. RIDINGS:  However, developments of the last week have changed it and now the government has acknowledged it, or at least the solicitor general has acknowledged that these restrictions are unconstitutional, which has caused us to amend the complaint to --

THE COURT:  All right.  Well. . . look, I -- all right.  The fact is, I'm going to have to appoint someone to argue the constitutionality of this structure because the government -- I mean, Pardis, I think you've made clear, and the SG's made clear, the government is not going to argue that; they are going to concede it's

14

unconstitutional. So no way, no how would I ever just agree with it because in this posture, when it's unclear -- I mean, if you could point to a Supreme Court case and the Supreme Court decided it, well, we wouldn't be litigating it. There wouldn't have been a need to. We wouldn't have it.

In other words, this is a -- you know, I want the department to be mindful of this. We have -- it has been 14 or more years since the *Free Enterprise* decision. There have been probably tens of thousands of ALJ hearings since then. To my knowledge, not a single one has been enjoined, nor has a single one been reversed based on this argument. So what you're saying is that the last 14 years, thousands and thousands and thousands of hearings and decisions have been unconstitutional. Now, that's a -- you know, if you want to make that argument, all right, someone can make it.

MS. GHEIBI: Your Honor, I want to clarify that our position is, under *Collins*, that plaintiffs can't bring this claim because they have to show some form of injuries.

THE COURT: I understand that. I understand that. But you're also saying that our government has, for 14 years, since *Free Enterprise*, has been proceeding unconstitutionally every day, multiple times a day.

Now, if -- and no one has done anything about it.

Now, is that the government's position?

MS. GHEIBI: The government's position is that the dual layer removal is unconstitutional but just because the president -- just because the position is that the president can remove the ALJ without the dual level protection does not mean that the hearings and the proceedings are in and of themselves invalid because of that. It's only that -- it only goes to the question of the removal itself, the statutory removal position.

THE COURT: Well, that's semantics. If I -- you know. . . you're saying that the procedure has been unconstitutional since *Free Enterprise* decision in 2010, and no one has done a single thing about it. Everyone's just been proceeding. The government, private sector, Congress, presidents, whatever, have just been allowing unconstitutional proceedings to occur every single day. That's a -- I mean. . . I mean, normally, we don't just violate the constitution every day because we don't think someone's going to be harmed. I don't think that's how we operate.

So this is a -- that's what you're -- you're going to take that position, I mean, that's what -- that's what I think you're saying, that this -- this will -- this -- not only will the June 2nd hearing be unconstitutional, but all the hearings since 2010 by all the ALJs in the country have

been unconstitutional. So if that's what you're saying, okay, I will absolutely find someone good to take the opposite position.

MS. GHEIBI: Again, Your Honor, I don't want to articulate any particular position independent of what has been identified by the SGs. Of course, we are willing to brief the issue and answer -- answer the Court's questions to the best of our abilities once those issues are raised in the papers, but for now --

THE COURT: Well, they've -- look, I'm trying to -- I have never had to do this --

MS. GHEIBI: Understood.

THE COURT: -- Ms. Gheibi, in 26 years as a judge I've never had to appoint someone to defend a statute, defend a practice -- all right? -- the constitutionality of something.

MS. GHEIBI: Right.

THE COURT: Because the government's always defended it -- all right? -- and made the best argument possible.

MS. GHEIBI: Understood.

THE COURT: If the government's not going to do that, I'm absolutely going to have to find someone very good who will argue it and so I need -- I mean, I need you to -- if you're saying that you are not -- the government,

the Justice Department, is going to -- is not -- is going to concede the plaintiffs' argument that this hearing that will be held on June the 2nd, 2020 [sic], will be an unconstitutional proceeding, and that means that all the proceedings -- ALJ proceedings over the last 14 years have been unconstitutional, if that's the position you're going to take, then I will absolutely find someone to give me the best arguments the other way.

Is that -- is that the position DOJ is going to take?

MS. GHEIBI:  Your Honor, to the extent that the plaintiffs are saying that the -- that they are disputing the two-level removal sort of authority, that that is unconstitutional, we will not be disputing that, but to the extent that the Court wants to --

THE COURT:  All right.  So you're conceding that.

All right.  Well, if you're not disputing that, I don't have a case or controversy on that is the problem so I can just say I'm done with this, it's gone.  I just might do that.

Well, but I can't -- you know. . . I'm not going to concede it's unconstitutional so the only fair thing to do is find someone good who will take the opposite view.

MS. GHEIBI:  But -- but --

THE COURT:  I will do that.

Yes.

MS. GHEIBI:  But, of course, I do want to clarify that the government is still going to be disputing their Article II claim because our position is that they still need to show --

THE COURT:  I understand that.

MS. GHEIBI:  Yes.

THE COURT:  You're going to say that I should deny -- notwithstanding that it will be unconstitutional on June the 2nd, I still deny the motion for now a permanent injunction because the plaintiffs can't show that any harm will befall them based on the structural defect.

MS. GHEIBI:  Correct.  Correct.  That will be the government's position.

And to the extent the Court wants briefing broader than that, yes, the courts would have to -- I will not be making those arguments on our behalf.

THE COURT:  All right.  Well, it seems to me I've got to find someone who will make those arguments because I -- I'm certainly not going to write an opinion saying I concede that this is unconstitutional but under the case law, since there's no showing of harm, the hearing can go forward.  I'm not going to write that because I don't know if that's correct.

I respect the president if that's his position.  I

mean, candidly, it's on the record -- well, I can say it -- candidly, my guess, if you asked the president, he would say he can remove any ALJ and any member of the MSPB for whatever reason, or no reason.  I bet if I asked him that question, that would be the answer.  Okay?

So if you ask him, this case goes away.  Because there are no limitations on his power.  But I'd rather not call him at the hearing -- all right? -- or have him -- I'm not going to ask him to submit an affidavit.

MS. DARDEN:  I would love that though, just for the record.

THE COURT:  Well, because I -- I bet that if -- if I asked him that question, that would be his answer.  And it might be the Attorney General's answer too.  All right?  And if that's -- if that's the -- if that is their -- if that's their real position, then there is no structural defect.  But I -- the problem is the law says to the contrary.  And there are laws that say what the standard is and so. . . we have to presume that the president would follow the law for purposes of these -- for purposes of this case, but I may have to put that in my opinion that I presume the president will follow the law so I'm basing -- will base my decision on what the law is.  And there is no disagreement between what the law is and what it says.

So, all right.

MS. DARDEN: And -- Your Honor, this might be --

THE COURT: Yes?

MS. DARDEN: I'm sorry to interrupt you, Judge, I just wanted to say, you know, this might be oversimplifying things and turning to Mr. Ridings, because he's the technical expert in our tag team, but I think it's really largely our position that while these arguments are certainly germane, like, *Jarkesy* is the way out because the Supreme Court has basically said you should have the benefit of an Article III judge for a case exactly like this.

THE COURT: Well, I don't want to prejudge anything, Marisa, but I think that you have a lot of -- a big -- a number of hurdles with *Jarkesy* that you don't have with this.

I think there are a lot of ways you can distinguish this case from *Jarkesy*. And -- and -- and also you have the big hurdle of showing irreparable harm. All right?

There's no question what you're complaining about in that prong of your argument is not a structural defect at HUD, you're saying that you're entitled to a trial by a jury over the question of whether monetary penalties should be imposed for any violation of the law or the regulations. All right?

So -- and, number one, there's no certainty that any

penalties will be imposed.  Millennia could win, in which case, nothing.  And if penalties are imposed, you could appeal first to HUD because, remember, the ALJ issues a decision but if anyone objects or -- you know, then it has to go to HUD.  You appeal to HUD and if you're not satisfied with HUD, you go to the Sixth Circuit.  They've got these cases all the time.  So you absolutely have judicial relief, unquestionably.

So the only way I even touch the case, I have jurisdiction if you show it's here and now, and I -- that's a big hurdle, here and now on the Article III, in my view, and also there's. . . well, that's the main thing, you know, the -- oh, also, according to the facts that I read in the briefs, whether or not the ALJ imposes a monetary penalty is influenced by a number of equitable factors, like ability to pay, like effect on renters.  I mean, all sorts of factors that a jury couldn't deal with.  All a jury could decide is, you know, you're saying it's a breach of contract case.  All right.  Was the contract breached and, you know, what are the plaintiffs' damages.  All right?  They don't consider all those equitable factors.

So I think you have a lot more hurdles on *Jarkesy* so I'm going to have to reach both, in my view.  And they're different arguments and they're different -- different burdens and hurdles the plaintiff has to get by to warrant

emergency relief, which is -- which is, by the way, I mean, hoping -- hoping a government proceeding, particularly one of this importance, and I -- you know, this is a very important proceeding because HUD is -- Congress gave HUD the powers to intervene in -- while something is going on. All right? If HUD thinks that a project's in jeopardy because the owner, the manager is siphoning off money for impermissible purposes, they don't have to wait until the whole thing collapses. All right? They can, what I'll call -- you know, interim -- they have interim measures, and they do those -- they're doing that here. So this is a -- this is a -- in my view, a particularly important proceeding because -- and to halt it could cost a huge amount of taxpayer money, if it turns out that your client has siphoned money away, that's the allegation. That's all, it's an allegation. But it's a serious allegation, and it's a lot of money. $3 million.

So you -- you've got a big hurdle to get -- you know, to get me to say under these circumstances I'm going to halt -- prevent HUD from acting. Okay? That's a very big step, and it clearly imposes -- you know, if you're -- I'm balancing equities, that's what I got to do for equitable relief. So I've got to consider all this. And I certainly would never do it lightly. I don't make any decision lightly, but certainly one of this consequence.

So, anyway. . . all right. What -- what do you think is a reasonable briefing schedule? You tell me.

I mean, what we need is two -- we need -- you know, we need to come up with a stipulated list of facts. That will be the easiest thing. And then briefing on Article II.

MR. RIDINGS: Your Honor, I think coming up with stipulated facts should be relatively straightforward, and I think we can move as quickly as the Court would like on the briefing for Article II.

I am cognizant of Your Honor's view of wanting to appoint someone --

THE COURT: Yeah.

MR. RIDINGS: -- to respond and so I -- I think the briefing schedule I had in mind might be a little too fast in light of that.

THE COURT: Well, it seems to me the first -- I guess the first brief is Millennia's because you'd be arguing in support of your motion and we also -- I think the parties have to file something that you both agree that this should be converted into a motion for permanent injunction since there's no discovery needed, just so I've got something on the record.

All right. So the first -- the first brief would be yours, Matt, and Marisa, so you tell me what's reasonable. And again, I -- you know, I'm most likely going to agree

24

with it.

MR. RIDINGS:  Your Honor, I think we would be in a position to be able to file a brief by next Monday.

THE COURT:  Well, all right.

So that's March. . .

MS. DARDEN:  The 10th, Judge.

THE COURT:  You mean the 3rd, or the 10th?

Today's Monday, the 24th, Matt.  Are you saying March 3rd or March 10th?

Next Monday's March 3rd, so it's --

MR. RIDINGS:  March 10th, Marisa?

Yeah, March 10th, Your Honor.

THE COURT:  Okay.  That's -- that's okay. That's two weeks.

Well, Pardis, what are -- what -- you tell me.

MS. GHEIBI:  We'd prefer -- again, because of the sort of internal analysis that needs to be done, we'd prefer a briefing deadline that ends -- that ends up somewhere in April, maybe April 2nd, to give us sufficient time -- yeah, I would think Wednesday, April 2nd, or --

THE COURT:  Okay.

MS. GHEIBI:  -- or Thursday, April 3rd.

THE COURT:  Well, it makes a difference.  You want it April 3rd, that's fine.  April 3rd is okay.

Then -- so Millennia's reply?  If you get theirs by

Thursday, April 3rd. . .

MR. RIDINGS:  Your Honor, would the 11th work for --

THE COURT:  Okay.  Yeah.  That's -- let me. . . okay.

All right.  That seems reasonable to me, and that gives me a little time to get someone.

I am -- I asked our clerk of courts to find out how I go about doing this because this is one thing I've not had to do in 26-plus years as a judge.  So I'm sure there's a way to do it, so I'll do it and I will get someone.  And obviously the parties will know who that person is.

MS. GHEIBI:  Your Honor --

THE COURT:  Yes.

MS. GHEIBI:  -- we'd ask that -- if the briefing schedule allow for the government to also respond to whoever is going -- because in this posture, the government would get a surreply.  I'm not sure what timing you're thinking in terms of the sort of independent litigator but. . .

THE COURT:  Well, that's a good point.

Well, it seems to me that what makes sense is that when the government's reply -- response is due on the 3rd, that will also be the independent brief and then, right, the government would get a reply on the 11th also.  Because

26

you'd be replying both to -- well, I mean, Millennia would be replying to your brief and -- and the government's brief and you can reply to the government's brief also.

I mean, presumably you're not going to have -- say much because -- I mean, the independent brief, I'm confident, will take the position that no harm -- that there's no harm and therefore no injunction.  The independent brief will probably also say there's no constitutional violation in the first place so we don't even have to get to harm and, you know. . . you will have already probably conceded that in your brief and if you want to concede it again in your reply, fine, but presumably you're not going to disagree, I mean, with the independent brief's position that Millennia has not shown harm, actual harm from this defect and therefore is not entitled to an injunction.  But if there is something you want to dispute or clarify or whatever, absolutely, you can do your reply on. . . whatever you want to call it.  I guess it would be a. . . well, you'd be replying to the independent brief or responding to the independent brief, whatever it would be.  That's fine.

MS. GHEIBI:  To that end, can we -- if that's the case, can we request more time than April 11th?

I understand plaintiffs' counsel is trying with the sort of eight days between April 3rd and April 11th but, again, we -- there's so many steps we have to take

internally so I'm only requesting --

THE COURT:  Well. . .

MS. GHEIBI:  -- perhaps April 18th.  Another week.

THE COURT:  All right.  I'll give you one more week but I -- again, the hearing is June 5th so I'm --

MS. GHEIBI:  Right.  Right.

THE COURT:  I mean, I'll get to it. Obviously, I'm going to be working on it going along.  I know what the arguments -- I mean, and I have a pretty good idea of what cases people are going to cite because Rachel and I have been reading a lot of them this past weekend so I -- you know, obviously there could be -- there's a lot of litigation in this field and there -- I mean, most of the cases, the district court cases are in the last couple of months, so there could be others but. . .

All right.  I will issue an order and we'll proceed on this basis and I will work to find someone.

MR. RIDINGS:  Thank you, Your Honor.

One -- one question I have about this is the -- we have not yet been assigned a track in this case, Your Honor, and I just wanted to ask the Court about the page limitation for the brief, if you want us. . .

THE COURT:  Well, I don't want treatises here. I mean, I think this is -- these are fairly -- I mean. . .

you know, I don't think you need a whole lot of pages quite frankly.  There's been a lot of litigation.  So when you're -- you've got -- basically you got to address two -- I mean, obviously you've got all the standards for getting a preliminary injunction.  You're claiming that, you know, it's unconstitutional and you've got to address why you don't have to show harm, I mean, because you concede you don't have any, and the case law seems to be against you on that.  So you've got to come up with some authority or else you don't get any -- you get to -- I guess the Pyrrhic victory of saying, yeah, this is unconstitutional, but it doesn't really help your client because he still has to go forward on June the 5th and what he's trying to do is avoid proceeding on June 5th, so you got to address that.

So I don't -- look, what do you think you need to do this adequately?

MR. RIDINGS:  I think 25 pages, Your Honor.

THE COURT:  Well, I was going to think that, Matt, so look, let's say 25 pages.  If you work hard and you say, you know, we need a few more pages, fine.  Okay.  But I don't want a 40 or 50-page brief from anyone.

MR. RIDINGS:  Okay, Your Honor.

THE COURT:  That's not going to be helpful.

I know -- I've looked at these cases.  I think I know what they say.  What I'm really looking for is something

maybe I haven't seen.  Okay?  I mean. . . and -- and I'm looking for you -- you know, if you've got authority that harm isn't necessary.  That's significant.  Because you know that the government's taking that position.  I think virtually every -- every circuit, except maybe the Fifth in *Jarkesy*, all other circuits, including the Sixth -- and remember, I've got to follow the Sixth, and *Calcutt's* there.  Now, granted, it was reversed on others grounds, but it's been cited with authority by district courts in this circuit.  And so you've got three circuits on one side, one on the other.  And I've got to follow the Sixth.  So you've really got to show why I -- I mean, I guess you can argue, well, because it was reversed on other grounds, but I -- other courts in my circuit have followed that part of the holding that the Supreme Court didn't touch.  Supreme Court just said, look, circuit court is not supposed to relitigate facts, you know, come up with their own facts, which is pretty basic.  It's the same way they're not supposed to, you know, start reviewing my factual findings and come up with different facts.  Not to say that sometimes appellate courts haven't done that, but they're not supposed to. Okay.  So. . . okay.

So let's go with 25 and if you find you need more, you know, if it's a few more, I don't care.  If you need a lot more than 25, I think you need a pretty good showing why you

30

do.

MR. RIDINGS:  Thanks -- no.  That will be sufficient.

Thank you.

THE COURT:  All right.

MR. RIDINGS:  And just one -- one other thing, I apologize.  I was just looking at my calendar a little more closely.  Could we possibly do March 12th for our brief?  Is that okay, Your Honor?

THE COURT:  Yeah, that's a couple more -- that's fine.  March 12th.

So, Pardis, do you want a couple more days?

MS. GHEIBI:  Yes.  That would be great.  If we can move ours to April 7th.

THE COURT:  Yeah.  The 5th's a Friday -- I mean, Saturday.  All right.  So 4-7.  So we got March 12th. 4-7.

All right.  Now -- all right.  Now we need the reply. Before you would have had, like, eight days, so. . . what should we make it, like the 16th?  Something like that.  I don't know.

If there is -- if you get the independent brief and the government's brief on April the 7th, what -- Millennia, Matt and Marisa, what would you like?

MR. RIDINGS:  I suspect, Your Honor, that

you're correct that there's going to be a lot of overlap between those two briefs, so I think the 16th is reasonable, Your Honor.

THE COURT: All right. So 4-16.

All right. So, Pardis, what would you -- what would you like for your response? Because you'll get the independent brief the 16th. It will be the same day for them.

MS. GHEIBI: As I understand, we would get the independent brief on --

THE COURT: Wait a minute. 4-7.

MS. GHEIBI: Yeah.

THE COURT: You'd get the -- I guess you -- you're right, you get the independent brief on the 16th, it seems to me, because I want -- I want the -- well, I got to -- I'll have to -- I don't know. I'm trying to figure this out.

All right. March 12th for Millennia's. April 7th for the government's reply -- response. April 16th for Millennia's reply.

Well, I think the independent brief should be due April the 7th too so Millennia can reply to both of them.

Does that make sense?

MS. GHEIBI: I think as far as the government's concerned, it would be great if we could get

32

two weeks from the time we get the independent brief to reply to it.

THE COURT: I'm just trying to think if I -- maybe it makes -- I'll tell you, it would make -- it's -- would save time maybe -- it seems to me the independent brief should be April 16th and -- because it would be responding to both what Millennia said and what the government said. Otherwise, it's going to -- they're going to have to file another brief and that would be -- does that make sense to everyone?

MS. GHEIBI: Sure.

THE COURT: And then both of you can respond, you know, I'll come up with another date.

So Millennia's reply and the independent brief will be -- will be April 16th. All right.

Now we need -- I've got to let both of you respond to the independent brief.

MS. GHEIBI: Okay.

THE COURT: It will be -- it will be Millennia and the U.S. response to the independent brief.

All right. You've asked for two weeks, which would be April 30th. So I can -- that doesn't leave a lot of time but, you know, I'm going to start working on this. I mean, you know, that will make it April the 30th.

If you think you need two weeks, I'll do it. I'd

prefer it would be a little less.

MS. GHEIBI: Your Honor, we're willing to accommodate the Court however and so whatever timing, if you think less would be appropriate, and mindful of the fact that if the Court wants oral argument on the issue, just trying to be mindful of how much time that would allow to --

THE COURT: Yeah, well, I probably -- I mean, since there are no facts -- there will be no facts in dispute, I've got to believe with all these brilliant lawyers I'll -- you'll be able to make your arguments and I -- you know, I -- again, I've read a lot of the cases already. The cases aren't -- you know, there could be a new case, but I've read the ones that are there, and I typically don't have oral arguments on motions. If I need -- if I need it, I'll schedule it fast by Zoom. Okay. We can schedule it. If there's something that I need, I'll schedule it fast.

I mean, does Millennia think you need two weeks to respond to the government's brief? I mean, presumably the government's going to -- well, I mean, the independent brief is going to argue probably against you on both -- on all prongs but -- all right. I'll leave it April 30th, fine. Because I -- you know -- and we're going to, you know -- I'll get out my decision as soon as I can. It will obviously be before June 5th. How much before, I can't

promise -- I can't promise it, so --

MS. DARDEN:  June 2nd, Judge.

THE COURT:  June 2nd, so everyone should be -- well, that hearing's on until -- unless and until I would halt it.

LAW CLERK:  Judge, just quickly.  One -- did you want to set a deadline for that stipulated facts and stipulation to convert the preliminary injunction motion to one for a permanent injunction?

THE COURT:  That's probably not a bad idea. What -- you tell me what -- I mean, the one is easy.  You can do that in three seconds but the facts will take longer. So what -- it should be well in -- well in -- I mean, you sort of need that before Millennia can file their motion because you're going to be relying on it.

MR. RIDINGS:  Yes, Your Honor.  I -- I think we've had a good relationship with the government up to this point but I'm confident we can put that together relatively quickly.  I think March 3rd would --

THE COURT:  Yeah, that's what -- I was going to suggest March 3rd.  It shouldn't be -- I mean, these are basic facts.

MS. GHEIBI:  I --

MR. RIDINGS:  Jam you up, Pardis.

MS. GHEIBI:  I will point out that I

personally have a PI motion due in another matter on the 6th.

As you can imagine, our division has been very busy over the past couple of weeks, so if we could get some grace, Judge, perhaps maybe the 10th.  I know the brief is due on the 12th.  Maybe if we can have the 10th so that we can have a little bit more time to coordinate.

THE COURT:  Well, all right.  Maybe to finalize it, but you should be able to get the basic -- you know, exchange drafts, because it's not going to change much.  All right?  I mean, we're just basically talking about the structure, you know, how people are appointed, how they can be removed, you know.

MS. GHEIBI:  Um-hmm.

THE COURT:  It's not very -- you know.  It's basically referred to in all the briefs so far.  There's nothing going to be changed but I'll -- all right.  We'll make it March 10th.

MS. GHEIBI:  Thank you, Your Honor.

THE COURT:  But to help the Millennia lawyers, I mean, you should start exchanging drafts pretty quickly. Maybe why don't Millennia -- Marisa and Matt, why don't you send a draft over putting the facts that you think you need and then Pardis, all you really have to do -- obviously, if you think they've got a fact wrong, you adjust it and if

there's something -- a couple of things you need added, put them in.

MS. GHEIBI:  Got it.

Thank you so much.

THE COURT:  And also, make sure it's in there that there's no -- there's no evidence of what I'll call actual harm.  Use the verbiage from the case -- you know, it's no harm beyond the structure itself --

MS. GHEIBI:  Right.

THE COURT:  -- all right? -- is probably the way to put it.  No harm to Millennia other than the. . . the intangible -- intangible harm of appearing in an unconstitutional proceeding.  That's probably the best way to put it.

That is a harm.  I mean, it's -- no one's saying that it's not a -- but it's not the tangible harm that the courts have often requested.  Okay?

LAW CLERK:  And, Judge, I just -- piecemeal way that this briefing schedule has come together, I did just want to make sure everybody is on the same page and we all have the same dates down just quickly.

THE COURT:  All right.

This is what I have.  March 10th for the stipulation on everything.  March 12th for Millennia's brief.  April 7th for the government's response.  April 16th for Millennia's

reply and the independent brief.  And then April 30th for both sides' response to the independent brief.  And then I'll get to it.

Okay?

All right.  Well. . .

MS. DARDEN:  Thank you, Your Honor.

THE COURT:  I appreciate everyone's assistance in helping structure this and so we can get to an informed result but let everyone have the time they need to litigate it, and I'm glad we're -- it made no sense to do a PI.  You know, should make a decision and that's it.  I call it and whoever doesn't like it -- maybe no one will like it -- and they can appeal.

Okay.  Have a good afternoon.

Thank you.

MS. GHEIBI:  Thank you, Your Honor.

MR. RIDINGS:  Bye-bye, Your Honor.

(Proceedings adjourned at 3:27 p.m.)

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter prepared from my stenotype notes.

*/s/ Heather K. Newman*                    *6-4-2025*
HEATHER K. NEWMAN, RMR, CRR                    DATE